## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD BAUM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PATTERN ENERGY GROUP INC., ALAN R. BATKIN, THE LORD BROWNE OF MADINGLEY, RICHARD A. GOODMAN, DOUGLAS G. HALL, PATRICIA M. NEWSON, MONA K. SUTPHEN, MICHAEL GARLAND, and CANADA PENSION PLAN INVESTMENT BOARD,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Richard Baum ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Pattern Energy Group Inc. ("Pattern" or the "Company") against Pattern's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to merge Pattern into defendant Canada Pension Plan Investment Board ("CPPIB") cashing out all of the common stock of Pattern (the "Company Common Stock") and delisting Pattern from the NASDAQ (the "Proposed Transaction").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the United States Securities and Exchange Commission ("SEC") on December 13, 2019. The Proxy recommends that Pattern shareholders vote in favor of the Proposed Transaction.  The Proposed Transaction was first disclosed on November 4, 2019, when Pattern and CPPIB announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which CPPIB will acquire all of the Company Common Stock for $26.75 per share (the "Merger Consideration").[1]  The deal is valued at approximately $2.6 billion and is expected to close in the second quarter of 2020.  *See* Proxy at 1, 33.

3.     The process leading to the execution of the Merger Agreement was tainted by allowing holders of shares of Pattern's preferred stock ("Company Preferred Stock") to continue to hold preferred securities in the surviving corporation (and to receive dividends) and at the same time vote their Company Preferred Stock in favor of cashing out all Company Common Stock. *See* Proxy at 35.

4.     The Proposed Transaction is riddled with conflicts of interest given Pattern's relationship with Pattern Energy Group 2 LP ("Pattern Development") and Riverstone Pattern Energy Holdings II, L.P. ("Riverstone").  Pattern owns approximately 29% of the equity interests of Pattern Development and the remaining equity interests of Pattern Development are owned by Riverstone and members of Pattern management.  *See* Proxy at 36.  Additionally, Pattern is

---

[1] On August 12, 2019, an article was published indicating that Pattern engaged in discussions relating to a potential strategic transaction including a possible sale of Pattern. *See* Proxy at 44.

contractually restricted from transferring its interest in Pattern Development without its consent. *Id.*

5.    In fact, Pattern Development and Riverstone were included in the negotiations with bidders, including CPPIB, and negotiated their own transactions with bidders. As part of the Proposed Transaction, CPPIB and Riverstone have concurrently entered into an agreement to combine Pattern Development.[2]

6.    The Board has also voted in favor of a proposal for lucrative compensation to Pattern's executive officers. *See* Proxy at 131. Additionally, the Board voted in favor of a proposal allowing it to adjourn the shareholder vote on the Proposed Transaction if it looks like it will need to solicit additional votes. *Id.*

7.    Furthermore, the Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Pattern management, and the financial analyses conducted by Pattern's financial advisors, Evercore Group L.L.C. ("Evercore") and Goldman, Sachs & Co. LLC ("Goldman Sachs"). Goldman Sachs was retained by the special committee of the Board (the "Special Committee") during the bidding process. *See* Proxy at 40.

8.    For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive

---

[2]    https://www.prnewswire.com/news-releases/pattern-energy-enters-agreement-to-be-acquired-by-canada-pension-plan-investment-board-300950682.html.

Proxy to be disseminated to Pattern's shareholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to Pattern's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from defendants' violations.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Pattern.

10.     Defendant Pattern is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1088 Sansome Street, San Francisco, CA 94111. Pattern common stock trades on the NASDAQ Global Select exchange under the ticker symbol "PEGI."

11.     Defendant Alan R. Batkin ("Batkin") is the Chair of the Board and Chairperson of the Special Committee. *See* Proxy at 37-38.

12.     Defendant The Lord Browne of Madingley ("Browne") is a director on the Board.

13.     Defendant Richard A. Goodman ("Goodman") is a director on the Board as of December 30, 2018 and member of the Special Committee as of February 22, 2019. *Id.*

14.     Defendant Douglas G. Hall ("Hall") is a director on the Board and member of the Special Committee as of February 22, 2019. *Id.*

15.     Defendant Patricia M. Newson ("Newson") is a director on the Board and member of the Special Committee. *Id.*

4

16.     Defendant Mona K. Sutphen ("Sutphen")  is a director on the Board as of December 30, 2018. *Id.*

17.     Defendant Michael Garland ("Garland") is President, Chief Executive Officer, and a director of the Company.

18.     Defendants Batkin, Browne, Goodman, Hall, Newson, Sutphen, and Garland are collectively referred to herein as the "Board" or the "Individual Defendants."  Four (4) of the seven (7) current Board members served on the Special Committee.

19.     Defendant CPPIB is a Canadian investment management organization headquartered in Toronto that invests the assets of the Canada Pension Plan.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Pattern is incorporated in this District.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Pattern common stock and their successors in interest and/or their transferees, except defendants and any person, firm, trust, corporation or other entity related to or affiliated with the defendants (the "Class").

24.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of December 5, 2019, there were 98,240,118 shares of Class A common stock issued and outstanding. *See* Proxy at 1.

(b)     Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)     Whether Plaintiff and other members of the Class would suffer irreparable injury were defendants to file a Definitive Proxy with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

25.     Pattern was incorporated in October 2012 and completed its initial public offering

7

("IPO") in October 2013, with simultaneous listings on NASDAQ and the Toronto Stock Exchange. The Company used the proceeds of its IPO to acquire operating assets from its sibling company, Pattern Development.

26. On November 4, 2019, the Board approved Pattern's entry into the Merger Agreement with CPPIB.

27. According to the press release issued on November 4, 2019 announcing the Proposed Transaction:

**Pattern Energy Enters Agreement to be Acquired by Canada Pension Plan Investment Board**

November 4, 2019

*Pattern Energy Shareholders to Receive $26.75 per Share in Cash; Transaction Enterprise Value of Approximately $6.1 Billion*

*Canada Pension Plan Investment Board and Riverstone Holdings to Combine Pattern Energy and Pattern Development into an Integrated Renewable Energy Company*

*Transaction Expected to Close by the Second Quarter of 2020*

SAN FRANCISCO and TORONTO and NEW YORK, Nov. 4, 2019 /PRNewswire/ -- Pattern Energy Group Inc. (Nasdaq and TSX: PEGI) ("Pattern Energy" or "the Company") and Canada Pension Plan Investment Board ("CPPIB") today announced they have entered into a definitive agreement, pursuant to which CPPIB will acquire Pattern Energy in an all-cash transaction for $26.75 per share, implying an enterprise value of approximately $6.1 billion, including net debt.

CPPIB and Riverstone Holdings LLC ("Riverstone") have concurrently entered into an agreement pursuant to which, at or following the completion of the proposed acquisition of Pattern Energy by CPPIB, CPPIB and Riverstone will combine Pattern Energy and Pattern Energy Group Holdings 2 LP ("Pattern Development") under common ownership, bringing together the operating assets of Pattern Energy with the world class development projects and capabilities of Pattern Development.

Under the terms of the merger agreement, Pattern Energy shareholders will receive $26.75 in cash consideration for each share of Pattern Energy, representing a

8

premium of approximately 14.8% to Pattern Energy's closing share price on August 9, 2019, the last trading day prior to market rumors regarding a potential acquisition of the Company. The consideration also represents a 15.1% premium to the 30-day volume weighted average price prior to that date.

The Pattern Energy management team, led by Mike Garland, will lead the combined enterprise.

"This agreement with CPPIB and Riverstone provides certain and significant value for Pattern Energy shareholders with an all cash transaction at a very attractive stock price," said Mike Garland, CEO of Pattern Energy. "Over the years, Pattern Energy has been able to provide shareholders with a consistent dividend and now our shareholders can realize the value embedded in the Company. We believe the proposed transaction reflects the strength of the platform we have built."

"In reaching this transaction, the Pattern Energy Board of Directors undertook a robust process that we believe culminated in a transaction that delivers value to shareholders," said Alan Batkin, Chairman of the Pattern Energy Board of Directors. "As part of this process, the Board formed a special committee, composed of independent directors that directed the process at all times, and retained independent legal and financial advisors to assist our review of the transaction and provide a fairness opinion. The special committee reviewed multiple bids as part of a thorough process that involved multiple parties and evaluated the transaction against the Company's standalone prospects, performance and outlook relative to historic trading multiples and yields. Based on this review and in light of the transaction structure, the special committee unanimously determined that this transaction is in the best interest of the Company's shareholders and recommended it to the full Pattern Energy Board, which also determined that this transaction is advisable and in the best interests of the Company's shareholders. The transaction delivers significant, immediate and certain value to the Company's shareholders."

"Pattern Energy is one of the most experienced renewables developers in North America and Japan with a high-quality, diversified portfolio of contracted operating assets, aligning well with CPPIB's renewable energy investment strategy and the increasing global demand for low-carbon energy," said Bruce Hogg, Managing Director, Head of Power and Renewables, CPPIB. "The Pattern Energy management team has a proven track record of identifying and executing development strategies with differentiated competitive advantages. We look forward to working with Pattern Energy and Riverstone to grow the company."

"We have long been believers in Pattern Energy and have had a successful partnership with the Company since we first invested in it more than 10 years ago," said Chris Hunt and Alfredo Marti, Partners at Riverstone. "We have worked

closely with Mike and the Pattern Energy team to grow the Company from a development startup into a multinational operator and supplier of low cost, renewably sourced energy. We are confident the team will continue to develop world-class wind and solar assets, which will be an important part of our transition to cleaner forms of power generation. We look forward to continuing to support them in driving the Company's next phase of development."

**Transaction Details**

The transaction is expected to close by the second quarter of 2020, subject to Pattern Energy shareholder approval, receipt of the required regulatory approvals, and other customary closing conditions.

The Pattern Energy transaction is not contingent upon the completion of the Pattern Development transaction. Upon the completion of the transaction, Pattern Energy will become a privately held company and shares of Pattern Energy's common stock will no longer be listed on any public market. Pattern Energy will continue paying its quarterly dividend through the transaction close.

**Advisors**

Evercore and Goldman, Sachs & Co. LLC are acting as independent financial advisors to Pattern Energy's special committee, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as independent legal counsel to the special committee.

**About Pattern Energy**

Pattern Energy Group Inc. (Pattern Energy) is an independent power company listed on the Nasdaq Global Select Market and Toronto Stock Exchange. Pattern Energy has a portfolio of 28 renewable energy projects with an operating capacity of 4.4 GW in the United States, Canada and Japan that use proven, best-in-class technology. Pattern Energy's wind and solar power facilities generate stable long-term cash flows in attractive markets and provide a solid foundation for the continued growth of the business. For more information, visit www.patternenergy.com.

**About Pattern Development**

Pattern Development is a leader in developing renewable energy and transmission assets. With a long history in wind energy, Pattern Development has developed, financed and placed into operation more than 4,000 MW of wind and solar power projects. A strong commitment to promoting environmental stewardship drives the company's dedication in working closely with communities to create renewable energy projects. Pattern Development has offices in San Francisco, San Diego,

10

Houston, New York, Toronto, Mexico City, and Tokyo. For more information, visit www.patterndev.com.

**About CPPIB**

Canada Pension Plan Investment Board (CPPIB) is a professional investment management organization that invests the funds not needed by the Canada Pension Plan (CPP) to pay current benefits in the best interests of 20 million contributors and beneficiaries. In order to build diversified portfolios of assets, CPPIB invests in public equities, private equities, real estate, infrastructure and fixed income instruments. Headquartered in Toronto, with offices in Hong Kong, London, Luxembourg, Mumbai, New York City, San Francisco, São Paulo and Sydney, CPPIB is governed and managed independently of the Canada Pension Plan and at arm's length from governments. At June 30, 2019, the CPP Fund totaled C$400.6 billion. For more information about CPPIB, please visit www.cppib.com or follow us on LinkedIn, Facebook or Twitter.

**About Riverstone Holdings**

Riverstone is an energy and power-focused private investment firm founded in 2000 by David M. Leuschen and Pierre F. Lapeyre, Jr. with over $39 billion of equity capital raised to date. Riverstone conducts buyout and growth capital investments in the exploration & production, midstream, oilfield services, power and renewable sectors of the energy industry. With offices in New York, London, Houston and Mexico City, the firm has committed approximately $40 billion to more than 180 investments in North America, South America, Europe, Africa, Asia, and Australia.[3]

## B. The Proposed Transaction is the Product of a Conflicted Process

28.     On June 5, 2018, the Board held its annual strategy session and appointed the Special Committee.  The Board conceded that Pattern's contractual relationships with Pattern Development and Riverstone, as well as "certain members of its senior management," created "potential conflicts of interest."  *See* Proxy at 36.

29.     On July 13, 2018, the Special Committee agreed to engage Evercore as a financial advisor.  *Id.* at 37.

---

[3] https://investors.patternenergy.com/node/12251/pdf.

30.     On August 6, 2018, one of Pattern's directors on the Board, Michael Hoffman ("Hoffman"), inexplicably resigned.  *Id.*

31.     On October 29, 2018, Pattern received interest from two potential bidders – Party A – a large alternative asset manager, and Party B – a large private equity investment firm that also owns a company in the alternative energy business.  *Id.*

32.     Shortly thereafter, in November 2018, the Special Committee authorized Garland – Pattern's Chief Executive Officer –  and other members of Pattern management to reach out to representatives of Party A and Party B – before any confidentiality or exclusivity was agreed to. *Id.* at 38.

33.     On December 28, 2018, Pattern lost another Board member – Patricia S. Bellinger ("Belliger"), who resigned from her position on the Board (and on the Special Committee).  On December 30, 2018, Goodman and Sutphen were appointed to the Board to take the places of Hoffman and Bellinger.  *Id.*

34.     On January 16, 2019, Pattern received interest from Company C – a company operating in the alternative energy industry.  *Id.*  Approximately a month later, Pattern determined that it was unlikely that Pattern and Company C enter into any transaction.  *Id.* at 39.

35.     On January 25, 2019, Pattern management presented a presentation that it prepared that summarized a "*strawman proposal* developed by Pattern management, which involved a stock for stock combination of Pattern and Company A at an at-market exchange ratio."  *Id.* (emphasis added) (the "Strawman Proposal").  Neither the Board nor the Special Committee disclosed this Strawman Proposal to the shareholders of Pattern.  *Id.* at 38.

36.     On February 15, 2019, Party A proposed an at-market all-stock merger of Pattern and Company A.  *Id.*

37.     On February 21, 2019, representatives of Party A sent Pattern a preliminary non-binding term sheet outlining proposed terms for a potential transaction involving the acquisition by Company A of the outstanding shares of Company Common Stock in exchange for shares of Company A common stock at an at-market exchange ratio. Pattern also received interest from Company D – "an entity *controlled by a former member of our Board* who later partnered with a private equity investment firm." *Id.* at 39 (emphasis added).

38.     On February 22, 2019, the Board appointed defendants Goodman and Sutphen to serve as members of the Special Committee. *Id.*

39.     On March 11, 2019, representatives of Pattern sent a revised indicative term sheet to Party A, reflecting a number of revised terms, including a proposal to structure the proposed transaction as an acquisition of Company A by Pattern at an exchange ratio to reflect an implied 15.0% premium to the trading price of Company Common Stock.  *Id.*  The parties engaged in due diligence in March and April 2019.  *Id.* at 40.

40.     In early April 2019, the members of the Special Committee determined to continue to engage Goldman Sachs as a second financial advisor to evaluate proposals with respect to a potential transaction along with Evercore.  *Id.*  No rationale for expending funds on a second advisor has been provided to the common shareholders.

41.     On April 11, 2019, Party A, Pattern and an affiliate of Riverstone entered into a three-party side letter to the confidentiality agreement previously entered into between Party A and Pattern.  *Id.*  Just like that, Riverstone began taking part in the bidding process thereby, upon

information and belief, tainting such process.

42.     On April 15, 2019, CPPIB expressed interest in potentially acquiring Pattern. *Id.*

43.     On April 16, 2019, Pattern management met with representatives of Party A and *two representatives of Riverstone – who are directors of Pattern Development –* to discuss how Pattern Development would be affected by a transaction.   Upon information and belief, this meeting further tainted negotiations with Company A.  The Proxy confirms that "Party A indicated that it would be potentially interested in having the company that survived a combination of Pattern and Company A directly acquire Pattern Development."

44.     On May 16, 2019, defendant *Batkin sent a memorandum to members of the Special Committee regarding CPPIB's expression of interest* in a potential transaction involving CPPIB, Pattern *and Pattern Development. Id.* at 40 (the "May 16th Batkin Memorandum").  The May 16th Batkin Memorandum has not been disclosed to Pattern's common shareholders.  Upon information and belief, from the outset, preference was shown to CPPIB – Pattern's affiliate.

45.     Batkin solicited consent from the Special Committee to negotiate a confidentiality agreement between Pattern and CPPIB for CPPIB to receive information regarding Pattern Development.   Upon information and belief, Pattern Development and Riverstone were now irreversibly interwound in the discussions of any "strategic" alternatives for Pattern.   The confidentiality agreement was signed on May 28, 2019.  *Id.* at 41.

46.     On June 14, 2019, Party D contacted defendant Batkin to indicate its interest in making an offer to acquire Pattern.  *Id.* at 42

47.     On June 27, 2019, the Special Committee approved the request for *Pattern management* to contact CPPIB and Party A to solicit written proposals regarding a potential

transaction with Pattern.  *Id.*

48.    As of July 2019, the parties made the following bids to Pattern:

| Company A | • All-stock transaction at an exchange ratio to reflect an implied 15.0% premium to the trading price of Company Common Stock.<br>• Combined entity would purchase Pattern Development in a transaction financed by the sale to Party A of shares in the combined company.<br>• Party A is willing to acquire Pattern without also acquiring Pattern Development at an exchange ratio to reflect an implied 20.0% premium to the trading price of Company Common Stock.<br>• For either transaction, Party A would be willing to offer the holders of Company Common Stock up to $750 million of cash consideration to electing holders in lieu of shares in the combined company. *See* Proxy at 43-44. |
|---|---|
| Company D | • Non-binding offer to acquire the outstanding shares of Company Common Stock for $25.00 per share in cash.<br>• Proposal conditioned on Party D's completion of a due diligence review of the business and operations of each of Pattern and Pattern Development. *See* Proxy at 42-43 |
| CPPIB | • Non-binding proposal to purchase the outstanding shares of Company Common Stock for $25.50 per share in cash, subject to completion of due diligence.<br>• Proposal subject to an agreement being reached with respect to the acquisition of Pattern Development. *See* Proxy at 42 |

49.    On August 13, 2019, as requested by regulators in Canada, Pattern issued a press release in which it indicated that it had responded to inquiries from third parties.  Following the publication, Pattern received indications of interest from six (6) other new inbound buyers.  *See* Proxy at 44.  Upon information and belief, the Special Committee did not seriously pursue these new buyers.

50.    On August 16, 2019, representatives of the Special Committee received a revised non-binding letter proposal from CPPIB that included an offer to acquire the outstanding shares of Company Common Stock for between $26.25 and $26.50 in cash per share and to purchase the equity interests in Pattern Development not owned by Pattern from Riverstone.  *See* Proxy at 45.

51.    On August 19, 2019, the Special Committee authorized Pattern management to begin discussions of arrangements relating to their compensation and post-transaction roles with CPPIB – but not the other bidders. *Id.* On August 21, 2019, there were high-level discussions with CPPIB regarding arrangements relating to compensation and post-transaction roles for Pattern management. *See* Proxy at 46.

52.    As of September, Pattern received the following revised bids.

| Party A | • Price implying 15.0% premium to the trading price of Company Common Stock.<br>• Commence negotiations among Pattern, Party A, Riverstone and Pattern Development if it was granted exclusivity by each of Pattern Development and Pattern.<br>• Agreed to discuss proposed amendments imposed by Riverside to the terms of the agreements governing the commercial relationship between Pattern and Pattern Development. Proxy at 48-49 |
|---|---|
| Party B (Competitor) | • Price in the middle of $25.00 per share to $28.00 per share range.<br>• Require additional information to complete its due diligence review of Pattern and Pattern Development. Proxy at 49 |
| Party D | • Price of $26.75 per share in cash.<br>• Party D would acquire Pattern and Pattern Development.<br>• 30-day period of exclusivity to negotiate definitive documentation.<br>• Acquisition of Pattern cross-conditioned with the closing of a transaction with Pattern Development.<br>• Pattern be restricted from paying dividends to holders of Company Common Stock between signing and closing. Proxy at 49-50 |
| CPPIB | • $26.25 to $26.50 price range<br>• Reverse termination fee equal to 4.5% of Pattern's equity.<br>• Pattern to reimburse CPPIB for certain expenses in the event that the agreement was terminated under certain conditions.<br>• 35 day go-shop period subject to carve-outs. Proxy at 47, 49. |

53.    Despite the fact that the other bidders offered higher bids, upon information and belief, Pattern showed CPPIB preference and advanced negotiations. Negotiations with Party A were impeded by Riverstone, and Pattern was reluctant to provide due diligence to Party B who was a competitor. With respect to Party D, it appears that Pattern was reluctant to stop paying

dividends during negotiations.

54.     On October 3, 2019, Party A informed Batkin that Party A would not be willing to devote time and resources to discussions with Riverstone unless granted exclusivity.   Batkin declined.  *See* Proxy at 51.

55.     On October 17, 2019, the Special Committee instructed representatives of Party A, CPPIB and Party D to submit proposed definitive documentation by October 23, 2019 and "best and final" offers by October 28, 2019.  Party B was not willing to do so without the necessary due diligence that Pattern refused to provide.  *Id.*

56.     Party D declined to provide a definitive bid because Pattern had not agreed to provisions (a) restricting Pattern's right to declare and pay dividends to holders of Company Common Stock between signing and closing, (b) providing that closing of the transactions between Pattern and Party D would be cross-conditioned on the closing of a transaction involving Pattern Development, and (c) providing a 15 day go-shop period.  *Id.*

57.     On October 28, 2019, CPPIB raised its price to $26.75 (same as Party D but still potentially less than Party A and Party B).  CPPIB demanded that Pattern cease engaging in discussions with Party A and Party D during the go-shop period and proposed a CPPIB termination fee equal to 5.5% of Pattern's implied equity value.  *See* Proxy at 51-52.

58.     On October 30, 2019, Party A submitted a revised draft Party A merger agreement, which included a condition that Party A be permitted to engage in discussions with Riverstone prior to executing the draft Party A merger agreement and conditioned closing of the transactions contemplated by the draft Party A merger agreement on Riverstone's consent to certain amendments to Pattern Development's existing contractual relationships with Pattern.  *Id.* at 52.

59.     On November 1, 2019, Party A requested thirty (30) days to negotiate with Pattern Development and Riverstone.  Pattern gave Party A one (1) day – until November 2 at 5:00 p.m. Eastern Time.  *Id.* at 52.  Unsurprisingly, Party A declined.

60.     On November 2, 2019, Pattern requested that CPPIB increase its bid by $0.25 per share and CPPIB declined.  *See* Proxy at 53.

61.     On November 3, 2019, after having reviewed *the interest of Pattern management in connection with the proposed Merger and the proposed transaction involving CPPIB and Pattern Development*, the Special Committee recommended that the Board approve the Merger Agreement.  *Id.*  The Board approved with Garland abstaining.  *Id.*

## C. Pattern's Officers Stand to Receive Benefits Unavailable to the Class

62.     The Proxy concedes that Pattern's directors and executive officers have interests in the merger that are more beneficial than the interests of the Company's stockholders generally, due to their ownership (and treatment upon change of control) of (a) Company options, (b) restricted shares, (c) performance shares, restricted stock units ("RSUs"), and (d) equity awards. Proxy at 69-71.

63.     Additionally, Pattern's executive officers entered into amended employment agreements approved by CPPIB, which provide for – among other benefits – annual equity awards and benefits.  *Id.* at 71-73.

64.     Furthermore, pursuant to the Form 8-K filed on November 4, 2019, Pattern's executive officers and affiliates entered into a "Contribution Agreement," which likewise provides for unique benefits to such officers.

65.     The charts below from the Proxy summarizes the extraordinary benefits to these insiders:

*Pattern Restricted Shares, Pattern Performance Shares and PEGH2 Units (Capital)*

| Name and Title | Pattern Restricted Shares and Performance Shares Contributed and Exchanged (unvested)(1) | | | | PEGH2 Units (Capital)— Contributed and Exchanged (vested)(1) | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Pattern Restricted Shares Contributed (#) | Pattern Performance Shares Contributed (#) | Newco Units Received (#) | Estimated Value of Newco Units Received ($)(2) | PEGH2 Units (Capital) Contributed (#) | Newco Units Received (#) | Estimated Value of Newco Units Received ($)(2) | Estimated Potential Future Earnout ($) |
| Michael M. Garland | 27,923 | 85,115 | 3,023,753 | 3,023,753 | 1,403,784 | 2,157,719 | 2,157,719 | 321,191 |
| Michael J. Lyon | 13,036 | 39,714 | 1,411,063 | 1,411,063 | — | — | — | — |
| Hunter H. Armistead | 14,321 | 43,493 | 1,546,511 | 1,546,511 | 1,332,074 | 2,047,494 | 2,047,494 | 304,784 |
| Daniel M. Elkort | 10,994 | 33,482 | 1,189,720 | 1,189,720 | 304,567 | 468,142 | 468,142 | 69,686 |
| Esben W. Pedersen | 13,036 | 39,714 | 1,411,063 | 1,411,063 | — | — | — | — |
| Aggregate interests held by other executive officers(3) | 9,460 | 29,179 | 1,033,567 | 1,033,567 | 285,027 | 438,108 | 438,108 | 65,215 |

*PEGH2 Units (Profits Interest)*

| Name and Title | PEGH2 Units (Profits Interest)— Contributed and Exchanged (vested) (1) | | | | PEGH2 Units (Profits Interest)— Contributed and Exchanged (unvested) (1) | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | PEGH2 Units (Profits Interest) Contributed (#) | Newco Units Received (#) | Estimated Value of Newco Units Received ($)(2) | Estimated Potential Future Earnout ($) | PEGH2 Units (Profits Interest) Contributed (#) | Newco Units Received (#) | Estimated Value of Newco Units Received ($)(2) | Estimated Potential Future Earnout ($) |
| Michael M. Garland | 123,251 | 8,227,214 | 8,227,214 | 6,765,514 | 123,249 | 8,227,114 | 8,227,114 | 6,765,432 |
| Michael J. Lyon | — | 1,214,884 | 1,214,884 | 999,040 | — | 1,214,883 | 1,214,883 | 999,039 |
| Hunter H. Armistead | 116,901 | 7,803,324 | 7,803,324 | 6,416,934 | 116,900 | 7,803,257 | 7,803,257 | 6,416,879 |
| Daniel M. Elkort | 42,350 | 2,826,957 | 2,826,957 | 2,324,702 | 42,350 | 2,826,924 | 2,826,924 | 2,324,674 |
| Esben W. Pedersen | — | 1,672,134 | 1,672,134 | 1,375,052 | — | 1,672,133 | 1,672,133 | 1,375,051 |
| Aggregate interests held by other executive officers(3) | 15,625 | 1,042,997 | 1,042,997 | 857,691 | 10,000 | 667,518 | 667,518 | 548,922 |

| Named Executive Officer | Cash ($)(1) | Equity Awards ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
| --- | --- | --- | --- | --- |
| Michael M. Garland | 3,158,641 | 3,023,753 | 43,089 | 6,225,483 |
| Michael J. Lyon | 1,298,697 | 1,411,063 | 41,736 | 2,751,496 |
| Hunter H. Armistead | 1,488,801 | 1,546,511 | 41,736 | 3,077,048 |
| Daniel M. Elkort | 1,175,975 | 1,189,720 | 41,736 | 2,407,431 |
| Esben W. Pedersen | 1,298,697 | 1,411,063 | 41,736 | 2,751,496 |

| Named Executive Officer | Base Salary Component of Severance ($) | Average Bonus Component of Severance ($) | 2019 Target Bonus ($) |
| --- | --- | --- | --- |
| Michael M. Garland | 1,306,441 | 1,376,200 | 476,000 |
| Michael J. Lyon | 350,097 | 642,600 | 306,000 |
| Hunter H. Armistead | 379,101 | 704,700 | 405,000 |
| Daniel M. Elkort | 338,275 | 542,700 | 295,000 |
| Esben W. Pedersen | 350,097 | 642,600 | 306,000 |

| Named Executive Officer | Company Restricted Shares (#) | Value of Company Restricted Shares ($) | Company Performance Shares (at maximum) (#) | Value of Company Performance Shares ($) | Total Value of Company Equity Awards ($) |
|---|---|---|---|---|---|
| Michael M. Garland | 27,923 | 746,940 | 85,115 | 2,276,813 | 3,023,753 |
| Michael J. Lyon | 13,036 | 348,713 | 39,714 | 1,062,350 | 1,411,063 |
| Hunter H. Armistead | 14,321 | 383,073 | 43,493 | 1,163,438 | 1,546,511 |
| Daniel M. Elkort | 10,994 | 294,076 | 33,482 | 895,644 | 1,189,720 |
| Esben W. Pedersen | 13,036 | 348,713 | 39,714 | 1,062,350 | 1,411,063 |

*See* Proxy at 76-78.

### D. The Preclusive Deal Protection Devices

66.     Among other things, Pattern will be required to pay a termination fee of up to $79.0

million if the Merger Agreement is terminated under specified circumstances. *Id.* at 103.

### E. The Materially Incomplete and Misleading Proxy

67.     The Proxy is misleading and omits the following information to enable the

Company's shareholders to make a reasoned decision on how to vote.

### 1) *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

68.     The Proxy omits crucial information regarding Pattern's financial forecasts (the

"Forecasts"), including:

- The definition of "Project Distributions" as used in the Forecasts
- Separate projection line items for each year of the Forecasts, as available for use by Evercore for purposes of its analyses, including:
  - Pattern Development distributions (for years 2019, 2024-2027)
  - Revenues by type, including:
    - Electricity sales
    - Other revenue
  - Cost of revenue by type, including:
    - Project expense
    - Transmission costs
    - Depreciation, amortization and accretion
  - Operating expense, by type, including:
    - General and administrative
    - Development expenses
    - Related party general and administrative

20

- Taxes on Project Distributions
- Corporate general and administrative costs (if different from general and administrative expenses)
- Corporate interest expense
- Acquisition expense
- Proceeds and investments in Gulf Repower project
- Debt repayments
- Asset divestiture proceeds
- New debt issuance
- Refinancing proceeds
- Changes in revolver issuances and paydown

## 2) *Materially Incomplete and Misleading Disclosures Concerning Financial Analyses*

69.     The Proxy is deficient in terms of Evercore's financial analyses and fails to disclose

the following information:

*Selected Public Company Trading Analysis (Proxy at 61-64)*

- Individually observed multiples for each of the selected companies, including:
    a.   2020E CAFD
    b.   2020E Dividend Yield
    c.   2020 Adjusted EBITDA
- Individual inputs and assumptions utilized by Evercore to derive the discount rate range of 12.5% - 17.5% for the Pattern Development distributions
- The benchmarking analyses, if any, did Evercore perform for Pattern relative to the selected companies
- The specific amounts of "total proportionate debt" and cash and cash equivalents used by Evercore in this analysis

*Selected Transactions Analysis (Proxy at 64-65)*

- The individually observed multiples for each of the selected transactions, including:
    a.   CAFD Multiple
    b.   Adjusted EBITDA Multiple
- Benchmarking analyses, if any, that Evercore performed for Pattern relative to the selected companies
- Specific amounts of "total proportionate debt" and cash and cash equivalents used by Evercore in this analysis

- The individual inputs and assumptions utilized by Evercore to derive the discount rate range of 12.5% - 17.5% for the Pattern Development distributions

*Discounted Cash Flow Analysis (Proxy at 65-66)*

- How stock-based compensation expense was treated -- as a cash or non-cash expense for purposes of this analysis
- Individual inputs and assumptions utilized by Evercore to derive the discount rate range of 12.5% - 17.5%
- The range of implied perpetuity growth rates resulting from the CAFD Multiple terminal value analysis
- The range of implied CAFD multiples resulting from the perpetuity growth terminal value analysis
- The actual 2024 CAFD amount to which the Evercore selected terminal CAFD multiples were applied
- The actual terminal year estimate of the standalone, levered, after-tax free cash flow to equity, to which the Evercore selected perpetuity growth rates were applied
- The individual inputs and assumptions utilized by Evercore to derive the discount rate range of 12.5% - 17.5% for the Pattern Development distributions
- The individual inputs and assumptions utilized by Evercore to derive the discount rate range of 7.5% - 9.5% for Pattern's cost of equity

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     Defendants have filed the Proxy with the SEC with the intention of soliciting Pattern shareholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

22

72.     In so doing, defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Pattern, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

73.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

74.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Pattern shares and the financial analyses performed by the financial advisors in support of its fairness opinion; and (iii) the sales process.

75.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the financial advisors reviewed and discussed its financial analyses with the Board during various meetings, and further states that the Board relied upon the financial advisors' financial analyses and fairness opinion in connection with approving the Proposed Transaction.  The Individual Defendants knew or should have known

that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

76.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## <u>COUNT II</u>

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

77.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

78.     The Individual Defendants acted as controlling persons of Pattern within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Pattern and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

79.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the

24

Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

81.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

82.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and his counsel as class counsel;

B.      Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to Pattern shareholders unless and until defendants agree to include the material information identified above in the Definitive Proxy;

C.      Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 27, 2019

**RIGRODSKY & LONG, P.A.**

By: _/s/ Gina M. Serra_
        Brian D. Long (#4347)
        Gina M. Serra (#5387)

**OF COUNSEL:**
        300 Delaware Avenue, Suite 1220

**ROWLEY LAW PLLC**
        Wilmington, DE 19801
Shane T. Rowley
        Telephone: (302) 295-5310
Danielle Rowland Lindahl
        Facsimile: (302) 654-7530
50 Main Street, Suite 1000
        Email: bdl@rl-legal.com
White Plains, NY 10606
        Email: gms@rl-legal.com
Telephone: (914) 400-1920
Facsimile: (914) 301-3514
        _Attorneys for Plaintiff_